IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CRAIG ZIMMERLEIN, ) | |
| Petitioner, ) | |
| ) | Hon. George W. Lindberg |
| v. ) | Case Number 08 C 2595 |
| ) | |
| NEDRA CHANDLER, Warden, ) | |
| Dixon Correctional Center, ) | |
| Respondent. ) | |

MEMORANDUM OPINION AND ORDER

Before the court is Craig Zimmerlein's ("Zimmerlein" or "petitioner") petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. For the reasons set forth below, the petition is denied.

*I. Introduction*

In 1997, a jury in Kane County, Illinois convicted Zimmerlein of murdering his three-year-old stepson, Travis Follman ("Travis"). The trial judge sentenced Zimmerlein to a 40-year term of incarceration for Travis' murder. Zimmerlein is currently serving his sentence at the Dixon Correctional Center in Dixon, Illinois. In his petition, Zimmerlein seeks a writ of habeas corpus claiming his trial counsel was ineffective because, during the jury trial, his counsel failed to present available witnesses whose testimony would have raised reasonable doubt as to whether he was guilty of murder. Petitioner claims that if the jury had heard from the uncalled witnesses, it would have convicted him of the lesser crime of involuntary manslaughter and not murder. Zimmerlein also claims that his due process rights were violated when the Illinois Appellate Court applied the wrong standard of review on his direct appeal of the trial court's denial of his motion to suppress. Petitioner claims the Illinois Appellate Court applied a manifest weight of

the evidence standard instead of the correct *de novo* standard of review.

*II. Factual Background*

Under 28 U.S.C. § 2254(e)(1), the Court presumes the state court's factual determinations are correct for the purpose of habeas review. The facts relevant to Zimmerlein's petition follow. Travis was born on February 20, 1993 and diagnosed with Down's Syndrome and a heart defect. Travis underwent a complicated heart surgery when he was six months-old and was developmentally delayed and smaller in size than other children his age. Travis died approximately one month after his third birthday, on March 23, 1996. At the time of his death, Travis had not yet learned to talk.

Zimmerlein began dating Travis' mother, Donnita, in August 1995, when Travis was approximately two and a half years-old. Donnita and Zimmerlein married in January 1996 and Zimmerlein assumed parenting responsibilities for Travis. On the evening of March 20, 1996, Donnita went shopping with her friend Tina at around 7 p.m. They left Travis and Tina's eighteen month-old daughter, Kristen, in Zimmerlein's care. According to what Zimmerlein told Mike Anderson, a detective sergeant in the Kane County Sheriff's department, while Travis and Kristen were in his care, Zimmerlein kicked Travis twice in the stomach because Travis went into a bedroom that he was not allowed to enter.

During the murder trial, Zimmerlein testified that while he was caring for Kristen and Travis on the evening of March 20, 1996, he heard the children making noise in an upstairs bedroom. At about 7:30 p.m. that evening, Zimmerlein yelled at the children to get out of the bedroom he shared with Donnita. The children complied and went downstairs. A half hour later, around 8:00 p.m., Zimmerlein heard the children upstairs again and felt frustrated and agitated.

2

He went upstairs and found Travis and Kristen in his bedroom where they were not allowed to be. Zimmerlein lost his temper and kicked Travis in the stomach. Travis fell to the floor and cried and Zimmerlein kicked him again in the stomach. Zimmerlein testified that he kicked Travis as a punishment, but did not think that the kicks were hard enough to hurt Travis. In March 1996, Zimmerlein was a fairly muscular person. He lifted weights about four times a week, rollerbladed and waterskied.

After the kicks, Zimmerlein testified that Travis was crying and Zimmerlein took Travis' hand and walked him over to the stairs. Travis sat down and started to scoot down the stairs, but then fell and tumbled to the bottom of the stairs. During the tumble, Travis cut his lip. Thereafter, Zimmerlein changed Travis' cloths, put him in bed and gave him a sipper cup. Later, Zimmerlein checked on Travis and became concerned because Travis' stomach was swelling and his hands were cold. Travis had also vomited in bed and some blood came out of his mouth.

Around 8:45 p.m. that evening, Zimmerlein paged Donnita. When Donnita answered the page and called Zimmerlein, he told her that she should come home and "see the damage." When Donnita saw Travis she began to cry and immediately took Travis to Delnor Hospital in St. Charles. The doctor on call at the hospital, Narha Lee, ordered a CT scan that indicated a rupture in Travis' abdomen. Exploratory surgery of Travis' abdominal cavity revealed a six to seven centimeter tear in his stomach. According to Dr. Lee, Travis' stomach was "just blown out" and there appeared to be Spaghettios, which Travis had eaten for dinner that evening, all over his abdomen. Travis also had a small tear on his spleen. According to Dr. Lee, Travis' injuries were caused by a "great deal of force" and that was consistent with being kicked twice in the stomach by an adult. The injury could not have been caused by falling down the stairs. The injury would

have been very painful and Travis likely would have cried until he exhausted himself.

Travis was transferred to Children's Memorial Hospital ("Children's") on March 21, 1996 and arrived at approximately 1:15 a.m. At that time, Travis was critically ill, but borderline stable and had uncontrolled internal bleeding. Dr. Arensman at Children's performed another surgery on Travis because the bleeding would not stop. Travis had a stomach laceration, swollen bowel and bruised pancreas. Dr. Arensman repaired the stomach to stop the bleeding, but Travis did not improve because his lungs began to fill with fluid. Travis died on March 23, 1996.

Dr. Arensman opined that Travis was a victim of child abuse and that his stomach injury was caused by a "very forceful blow to the abdomen" and was not consistent with falling down the stairs. The blow must have been "tremendous" because the stomach has an extra muscle coat and does not perforate easily.

According to petitioner, the crucial question at his criminal trial was whether his actions of kicking Travis in the stomach on March 20, 1996 were acts of murder or involuntary manslaughter. The jury received instructions on both offenses. In his closing argument, Zimmerlein's defense attorney argued that petitioner's actions constituted involuntary manslaughter and not murder because Zimmerlein loved Travis. The attorney argued that because Zimmerlein loved Travis, he did not intend or know that he would cause Travis great bodily harm or death when he kicked him in the stomach.

In support of the defense theory that Zimmerlein loved Travis and did not intentionally murder him, the defense called Donnita; Travis' maternal grandmother, Kathleen Harwood; and Travis' teacher/daycare provider, Mari Elizondo. In his habeas petition, Zimmerlein argues that his trial counsel rendered ineffective assistance of counsel by choosing not to call six other non-

relative witnesses to testify about their observations of Zimmerlein interacting with Travis and their opinion about whether Zimmerlein loved Travis.

The non-relative witnesses included George Abens, Nancy Abens, Barbara Voss, Beverly Briggs-Delp, Garland Spoonmore, and Karol Grandgeorge. Each of those witnesses had very limited experiences watching Zimmerlein interact with Travis. The witnesses' experiences were limited to watching Zimmerlein interact with Travis at a wedding shower, during water skiing practices and at a race track. All of the observations occurred in public places.

*III. Analysis*

"Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a petitioner is entitled to habeas relief when a decision of the state court is 'contrary to' or 'an unreasonable application of' clearly established federal law as determined by the United States Supreme Court." *Burr v. Pollard*, 07 C 4031, 2008 WL 4569900 at *2 (7th Cir. Oct. 15, 2008) (quoting 28 U.S.C. § 2254(d)(1)). "A decision is 'contrary to' Supreme Court precedent when it relies on a rule that conflicts with that precedent or reaches a different result in a similar case." *Burr*, 2008 WL 4569900 at *2. "A state court unreasonably applies clearly established law if it 'identified the correct governing legal principle . . . but unreasonably applies that principle to the facts of the prisoner's case.'" *Burr*, 2008 WL 4569900 at *2 (quoting *Williams v. Taylor*, 529 U.S. 362, 413 (2000)). Error alone is not sufficient. *Burr*, 2008 WL 4569900 at *2. The state court's decision must be "objectively unreasonable." *Id*.

In order to present a viable claim for federal habeas review, petitioner must establish that he (1) exhausted all applicable state court remedies and (2) his claims are not procedurally defaulted. *See* 28 U.S.C. § 2254(b). Respondent concedes that petitioner has exhausted all

5

available state court remedies and that his claims have not been procedurally defaulted. Therefore, the Court will address both of Zimmerlein's claims on the merits.

### A. Appellate Court Standard of Review

Zimmerlein argues that the Illinois Appellate Court applied the wrong standard of review in his direct criminal appeal. During the underlying criminal case, Zimmerlein filed a motion to suppress statements he made to police at the hospital on March 20, 1996. Zimmerlein argued that he was "in custody" for *Miranda* purposes and that police failed to Mirandize him before talking to him. The trial court found that Zimmerlein was not "in custody" for purposes of *Miranda* and denied the motion to suppress. The Illinois Appellate Court reviewed that finding under a manifest weight of the evidence standard. Zimmerlein argues that the correct standard of review was *de novo* and that in applying a manifest weight of the evidence standard, the Illinois Appellate Court violated *Ornelas v. United States*, 517 U.S. 690 (1996).

As the court stated above, petitioner is only entitled to habeas relief if the state court's decision regarding the applicable standard of review for an "in custody" determination was "contrary to" or "an unreasonable application of clearly established federal law." Zimmerlein's claim that the Illinois Appellate Court misapplied the decision in *Ornelas* is misplaced. *Ornelas* involved a motion to suppress evidence recovered from a automobile search. In *Ornelas*, the Supreme Court considered issues related to a permissible investigatory automobile stop and probable cause sufficient to justify a warrantless search of a car. *Ornelas*, 517 U.S. at 693. The Supreme Court did not address any issues related to custodial interrogation or *Miranda* in *Ornelas*. Therefore, Zimmerlein's argument that the Illinois Appellate Court's review of the trial court's "in custody" finding was "contrary to" or an "unreasonable application" of *Ornelas* is

meritless. Because *Ornelas* does not address custodial interrogation or *Miranda* rights, petitioner has failed to cite to any federal law applicable to his case, must less establish that the Illinois Appellate Court's findings were contrary to federal law. Accordingly, the habeas petition is denied as to this claim.

      *B. Ineffective Assistance of Counsel*

Next, the Court turns to Zimmerlein's ineffective assistance of counsel claim. In order to prevail on this claim, Zimmerlein bears a heavy burden and must show that his counsel's representation fell below "an objective standard of reasonableness." *Strickland v. Washington*, 466 U.S. 668, 688 (1984). Zimmerlein must also show "that there exists a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different." *Id*. at 694. Reasoned tactical decisions not to call one or more witnesses does not make counsel's assistance constitutionally infirm. *Kubat v. Thieret*, 867 F.2d 351, 359 (7th Cir. 1989). In fact, "[i]t would be a rare case where counsel's conscious decision not to call a witness would amount to constitutionally ineffective assistance." *United States v. Weaver*, 882 F.2d 1128, 1139 (7th Cir. 1989).

Because petitioner's ineffective assistance claim is based on counsel's failure to call witnesses, petitioner must show: (1) what testimony those witnesses would have offered had they been called at trial; (2) that the witnesses' testimony would have been admissible; and (3) that the testimony would have created a reasonable probability of the jury acquitting petitioner of murder. *Wright v. Gramley*, 125 F.3d 1038, 1044 (7th Cir. 1997).

Zimmerlein argues that his trial counsel was ineffective because he did not personally interview and call six, non-relative witnesses to testify at the murder trial. Those witnesses were

7

not present on March 20, 1996 when Zimmerlein kicked Travis so hard that his stomach exploded. Instead, the witnesses' testimony would have been limited to a few instances where they observed Zimmerlein interact with Travis in public. Petitioner argues that those witnesses should have been called at trial to testify about his "love" for Travis and that their testimony would have persuaded the jury not to convict him of murder.

Zimmerlein cites *Crisp v. Duckworth* in support of his ineffective assistance of counsel claim. 743 F.2d 580 (7th Cir. 1984). *Crisp* is easily distinguishable from the facts of this case. In *Crisp*, the defense counsel failed to interview three eyewitnesses to an alleged murder and his interviews of all defense witnesses were limited to a few minutes the day each witness testified at trial. *Id*. at 583. In *Crisp*, the Seventh Circuit found that the defense counsel failed to adequately investigate the case prior to trial, but that the lack of zealous pre-trial preparation did not prejudice of the outcome of the trial and was not grounds for habeas relief. *Id*. at 583-84.

In the instant case, Zimmerlein's defense counsel hired a mitigation specialist who interviewed the six uncalled witnesses and defense counsel reviewed the mitigation specialists' notes prior to trial. Further, the uncalled witnesses were not eyewitnesses to the crime. They could merely testify that they saw Zimmerlein interact with Travis for no more than 3 hours and in many cases only a few minutes and that those interactions, in public places, appeared appropriate and "loving." Zimmerlein was the only living eyewitness to the kicking incident on March 20, 1996 and it appears that his attorney met with him extensively prior to trial. Therefore, *Crisp* is not applicable to the facts of this case.

At an evidentiary hearing on the postconviction petition Zimmerlein filed in state court, Zimmerlein's trial counsel testified that, in his experience, the best defense witness in a child

8

abuse case is the child's mother or other immediate family member. Defense counsel explained that he made a tactical decision to elicit testimony about Zimmerlein's love for Travis from Donnita and Kathleen Harwood, instead of calling lessor witnesses with more limited contact. Donnita and Kathleen were the State's witnesses and defense counsel believed that by calling State witnesses, he would limit the government's ability or desire to impeach those witnesses based on bias.

Both the state trial and appellate courts found that defense counsel's decision to only call Donnita and Kathleen to testify regarding Zimmerlein's love for Travis was a tactical decision and constituted reasonable professional judgment. Petitioner has not established that his trial counsel's representation fell below an objective standard of reasonableness, much less that but for his counsel's alleged error, the outcome of his murder trial would have been different. The Illinois Appellate Court's decision was not contrary to, or an unreasonable application of established federal law. Therefore, the habeas petition is denied as to Zimmerlein's ineffective assistance of counsel claim.

*IV. Conclusion*

For the reasons set forth above, Mr. Zimmerlein's petition for habeas corpus relief is denied.

ORDERED: Craig Zimmerlein's petition for writ of habeas corpus [1] is denied.

E N T E R:

George W. Lindberg
SENIOR U.S. DISTRICT JUDGE

DATED: October 29, 2008